IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| **BRIAN CARR et al.,** | |
|     **Plaintiffs,** | |
| v. | No. 2:14-CV-1 |
| **CHARLES E. SAMUELS, JR. DIRECTOR, FEDERAL BUREAU OF PRISONS;** | |
| **JOHN OLIVER, WARDEN, FEDERAL CORRECTIONAL INSTITUTION, TERRE HAUTE, INDIANA;** | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, AND ATTORNEYS' FEES;** |
| **JOHN CARAWAY, COMPLEX WARDEN, UNITED STATES PENITENTIARY, TERRE HAUTE, INDIANA;** | |
| **PAUL LAIRD, REGIONAL DIRECTOR, FEDERAL BUREAU OF PRISONS,** | **DEMAND FOR A JURY TRIAL** |
|     **Defendants.** | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Come now Plaintiffs Brian Carr, Reed Berry, Mark Crenshaw, Trone Kent, and John Wilson, by and through their attorneys, and for their Complaint state as follows:

**NATURE OF ACTION**

1.  Plaintiffs are sincere adherents of Islam confined in United States Penitentiary ("USP") facilities. Each of the men sincerely believes that his religion commands him to eat certified halal meals, including certified halal meat.

2. The prison's Religious Diet Program provides only kosher meals. Inmates who do not qualify for the Religious Diet Program are offered a "no-pork" or "no-flesh" alternative to the mainline menu, both of which are susceptible to contamination from pork or other products forbidden by the plaintiffs' religious beliefs.

3. Defendants' failure to provide certified halal meals, including halal meat, imposes a substantial burden on Plaintiffs' religious exercise and neither furthers a compelling governmental interest nor represents the least restrictive means of furthering a compelling governmental interest. Defendants have therefore violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, Plaintiffs' First Amendment right to free exercise of religion, and the Equal Protection Clause of the Fifth Amendment to the United States Constitution. Plaintiffs request appropriate declaratory and injunctive relief.

## JURISDICTION AND VENUE

4. This Court has jurisdiction according to 28 U.S.C. § 1331.

5. Venue is proper in this district according to 28 U.S.C. § 1391. Plaintiffs and Defendants are located in this District. The events giving rise to this action occurred in this District.

6. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

7. This action is brought pursuant to RFRA, 42 U.S.C. § 2000bb-1(c).

## PARTIES

8.      Plaintiff BRIAN CARR is an adult person currently confined at USP Terre Haute in Indiana.  Mr. Carr is a sincere adherent of Sunni Islam.

9.      Plaintiff REED BERRY is an adult person currently confined at USP Terre Haute.  Mr. Berry is a sincere adherent of Sunni Islam.

10.     Plaintiff MARK CRENSHAW is an adult person currently confined at USP Terre Haute.  Mr. Crenshaw is a sincere adherent of Sunni Islam.

11.     Plaintiff TRONE KENT is an adult person currently confined at USP Terre Haute.  Mr. Kent is a sincere adherent of Sunni Islam.

12.     Plaintiff JOHN WILSON is an adult person who was until recently confined at USP Terre Haute.  He is currently in transit between federal facilities.  Mr. Wilson is a sincere adherent of Shia Islam.

13.     Defendant CHARLES E. SAMUELS, JR. is the Director of the Federal Bureau of Prisons ("BOP"), which is an agency of the United States Department of Justice ("DOJ").  The BOP is authorized by the DOJ to maintain the federal prison system and to act through its governing body, officials, and employees.  As Director of the BOP, Defendant supervises BOP operations and executes its policies.  He is sued in his official capacity.

14.     Defendant JOHN OLIVER is the Warden at the Federal Correctional Institution ("FCI") in Terre Haute, Indiana.  As Warden, Defendant supervises prison operations and makes decisions regarding expenditure of prison funds.  He is sued in his official capacity.

15. Defendant JOHN CARAWAY is the Complex Warden at USP Terre Haute. As Complex Warden, Defendant manages the day-to-day operations of USP Terre Haute and executes its policies. Defendant was also the signatory on the response to the Request for Administrative Remedy filed by Plaintiff Berry. He is sued in his official capacity.

16. Defendant PAUL LAIRD is the Regional Director of the BOP's North Central Regional Office. As Regional Director, he enforces BOP policies and was the signatory on the response to the Regional Administrative Remedy appeals filed by Plaintiffs Berry, Crenshaw, and Kent. He is sued in his official capacity.

## STATEMENT OF FACTS

### Plaintiffs' Need to Consume Certified Halal Meals, Including Certified Halal Meat, Is a Sincere Religious Belief

17. Each of the Plaintiffs identifies as Muslim and follows the five pillars of Islam to the extent he is able while incarcerated. The five pillars of Islam include: (1) declaration that there is no god except God and that the Prophet Muhammad is God's messenger; (2) prayer five times a day; (3) fasting during Ramadan; (4) zakat, or charity; and (5) haj, or pilgrimage, to Mecca once in a lifetime if financially and physically able.

18. Plaintiffs also sincerely believe that their religion requires them to consume only food items that are "halal," meaning lawful, as opposed to foods that are "haram," or forbidden. Haram foods include, but are not limited to, pork or pork byproducts, meat from animals not slaughtered according to ritual, additives containing alcohol, including sugar alcohols, gelatin, animal shortening, and certain emulsifiers or enzymes. Plaintiffs believe that consuming haram food makes their prayers ineffective.

19. Plaintiffs believe that, as Muslims, they are forbidden from being vegetarian and therefore must consume halal meat, not just fish and vegetables, as part of their regular diet.

20. For meat to be halal, the animal from which it comes cannot have died of causes other than proper slaughtering in accordance with Islam. The animal must be slaughtered individually, by hand, by an adult Muslim while reciting the name of Allah, and in a manner prescribed by Islamic law. Meat not slaughtered in this manner is haram.

21. Unlike meat, fish are halal without regard to how they were slaughtered.

22. While fresh fruits and vegetables are halal, prepared fruits and vegetables are haram if prepared with sauces or additives that are haram, or if exposed to cross-contaminants through the cooking or serving process.

23. Plaintiffs believe that centuries ago, kosher standards may have approximated halal standards, leading to the statement in the Quran that Muslims are permitted to eat food of the "people of the book," but Plaintiffs believe that modern kosher practices no longer satisfy halal requirements.

### USP Terre Haute, and the BOP Generally, Do Not Provide Halal Meals.

24. USP Terre Haute does not provide certified halal meals.

25. The BOP's Religious Diet Program has its origins in a lawsuit filed in 1980 by Muslim inmates seeking access to halal meals, including halal meat, and alleging among other things that the BOP was violating their right to equal protection of the law by accommodating kosher diets but not halal diets. In response to that suit, in 1984 the BOP voluntarily instituted

the Modified Common Fare Religious Diet Program, which it represented to the District Court would be free of pork and pork derivatives, free of contamination, and would include at least three hot entrees a week "to accommodate the religious diet needs of the Muslim and Jewish inmates and would meet or exceed the required dietary allowances established by the Food and Nutrition Board of the National Academy of Sciences." *Al Shakir v. Carlson*, 605 F.Supp. 374, 375 (M.D. Penn. 1984).

26. On information and belief, although some halal meals were served at different facilities after 1984, at some point the BOP abandoned the Modified Common Fare Religious Diet Program in favor of a Religious Diet Program that consisted of individual sealed trays of pre-prepared kosher-certified meals. The Religious Diet Program meals are not certified as halal.

27. USP Terre Haute follows the BOP's national policy regarding religious dietary requirements. Pursuant to that policy, inmates who request halal meals are directed to two options: the national Religious Diet Program or the mainline menu "no flesh" option. Neither alternative satisfies Plaintiffs' religious dietary requirements.

**Religious Diet Program**

28. USP Terre Haute's Religious Diet Program consists of individually packaged meal trays purchased from an outside vendor and stamped with a kosher certification.

29. USP Terre Haute's Religious Diet Program is administered in accordance with the BOP's national Religious Diet Program standards, which specify that meals provided pursuant to that program are certified kosher.

30. Although both USP Terre Haute and the BOP have represented to Plaintiffs that the Religious Diet Program fulfills the dietary requirements of all religions, the program does not require halal certification, and the meals provided pursuant to that program are not halal certified even though the BOP acknowledges that Muslim inmates have religious dietary requirements.

31. Kosher-certified meals do not conform to Plaintiffs' religious dietary restrictions. Kosher requirements for the slaughter of animals do not ensure that the animal was slaughtered by a Muslim, or that the name of Allah was pronounced over each animal before it was killed. Additionally, Plaintiffs believe that some commercial kosher slaughterhouses use machines to kill the animals, which is forbidden under Plaintiffs' religious beliefs.

32. Kosher requirements also differ from halal requirements because the latter forbid the ingestion of any alcohol, including the trace amounts of alcohol that appear in some sauces and seasonings. On information and belief, kosher certification does not require that the food be free of trace amounts of alcohol.

### "No Flesh" Option

33. The BOP's standard, non-specialized national inmate meal program is referred to as the "mainline" menu. The mainline menu includes various meat products.

34. Pursuant to BOP policy, the mainline menu has an official "no flesh" option for which inmates may register. The "no flesh" option is identical to the regular mainline meals except that a non-meat alternative protein (such as peanut butter or cottage cheese) replaces the meat items.

35. The "no flesh" mainline menu option does not accommodate Plaintiffs' religious dietary restrictions because it requires Plaintiffs to maintain a vegetarian diet, which Plaintiffs sincerely believe to be forbidden by Islam.

36. The "no flesh" option is further doubtful or haram because many common foods, particularly prepared foods, contain trace amounts of pork enzymes or other haram ingredients. Although the "no flesh" option does not include meat entrees, neither USP Terre Haute nor the BOP has represented that the vegetables, bread, and dairy products are free from these enzymes and other haram ingredients.

37. USP Terre Haute's "no flesh" mainline menu option also fails to accommodate Plaintiffs' religious dietary restrictions because it is subject to contamination from pork products and other haram food items.

38. Unlike the Religious Food program's certified-kosher meals, which are purchased from an outside vendor and arrive in individually wrapped trays to prevent contamination, the "no flesh" option is prepared at the prison in the same kitchen as the non-vegetarian meals.

39. At each meal, inmates receiving the mainline menu request either a regular tray or a "no flesh" tray, and individuals working in the kitchen place each item onto the tray in accordance with those requests. There is no physical separation on the serving line between items containing meat and those that are purportedly vegetarian; a container of vegetables from which both regular and "no flesh" trays are served may be located directly next to a container from which pork is served.

40. In addition, on information and belief, the "no flesh" option uses the same trays as the mainline menu, and "no flesh" items are prepared using the same pots and other kitchen utensils that, on other occasions, are used to prepare items containing haram meat or meat that has not been certified halal.

41. Plaintiffs have personally witnessed sanitation problems in the kitchen that make it impossible for them to have confidence that the "no flesh" option is not contaminated with meat products. These sanitation problems include the mechanical dishwasher breaking, running out of soap to clean trays, running out of hot water, build-up of food residue inside the large pots in which food is prepared, and other inmates' failure to thoroughly clean the pots, trays, and utensils.

42. When the prison or a section of the prison is placed on lockdown, which occurs as often as a few times per month, inmates are served meals in their cells for the duration of the lockdown. Inmates on the Religious Diet Program continue to receive the same kosher-certified trays they otherwise would. However, inmates on the "no flesh" mainline menu receive the same meals as inmates on the regular, non-vegetarian diet.

43. On past occasions when USP Terre Haute was placed on lockdown, two of the three daily meals for both the "no flesh" diet and the regular diet consisted of bread, cheese, and a bologna-type meat. Plaintiffs on the "no flesh" option have been forced to consume the bologna-type meat during lockdown because the bread and cheese alone were not enough to sustain them.

### Food Available for Purchase at the Commissary

44. Plaintiffs can purchase food from the Commissary, though such purchases are restricted in both frequency and volume and are not permitted at all during inmate-specific or facility-wide lockdowns.

45. USP Terre Haute provides one meat product in the Commissary that has been certified halal, a beef sausage.

46. Plaintiffs are unable to afford to make regular purchases of the halal sausage. Between paying restitution for their crimes, purchasing hygiene products, stamps, and legal copies, and paying for phone calls to family, any income Plaintiffs have from their prison jobs or from family and friends is not sufficient to purchase halal sausages regularly to supplement the "no flesh" option or replace non-halal meat from the mainline menu or Religious Diet program.

### Plaintiffs' Religious Beliefs and Current Diets
### Plaintiff Brian Carr

47. Plaintiff Brian Carr (#14820-016) is an adult male housed at USP Terre Haute in Terre Haute, Indiana. Mr. Carr was previously housed in the Communications Management Unit ("CMU") in the Federal Correctional Institution at Terre Haute, but he has been in the USP facility since September 2011.

48. Mr. Carr has been Muslim since 1994 and has identified as a Sunni Muslim since 1999.

49. Mr. Carr identifies with the Hanafi school of Islamic thought, which provides a comprehensive explanation of halal dietary laws. Mr. Carr sincerely believes that he must follow the practices of the Prophet, which means that he must eat only halal food and that he is forbidden from being vegetarian. Eating a halal diet, including halal meat, is also essential to his practice as a Sufi.

50. Mr. Carr is on the Religious Diet Program and receives kosher-certified meal trays. Although the kosher meals do not conform to his religious beliefs, Mr. Carr believes that they are the least harmful to his faith of the options available to him. He does not eat the kosher meat.

51. Mr. Carr does not eat from the mainline menu because, even with the "no flesh" option, he is concerned about contamination from pork products and other haram ingredients.

**Plaintiff Reed Berry**

52. Plaintiff Reed Berry (#16114-040) is an adult male housed at USP Terre Haute in Terre Haute, Indiana.

53. Mr. Berry has identified as a Sunni Muslim for approximately six years and follows the Hanafi school of thought.

54. Mr. Berry sincerely believes that, as a Muslim, he is forbidden from being vegetarian. Because the Quran describes cows as nourishment and indicates that meat was slaughtered and given to the poor at the end of pilgrimages, Mr. Berry believes that meat-eating is part of the Muslim religion.

55. Mr. Berry does not believe that kosher requirements are sufficiently similar to halal standards to serve as a substitute because, for example, a rabbi might pronounce the name of God over a group of animals rather than individually, as halal standards require, and modern kosher slaughterhouses may use machines for slaughter, while halal standards require that animals be slaughtered by hand.

56. Rather than join the Religious Diet Program, which provides only kosher meals and does not provide the same variety and nutritional value as the mainline menu, Mr. Berry eats the "no flesh" option from the mainline menu. Mr. Berry does not eat the meat because it is not halal certified, but on occasion when the other food provided is not sufficient—such as during lockdown—he will eat the non-pork meat items.

57. Mr. Berry is concerned that the non-meat options on the mainline menu may be contaminated with traces of pork or other forbidden ingredients, either because they are cooked in the same pots, or because the utensils used for meat entrees are also used for side dishes and are not adequately cleaned.

**Plaintiff Mark Crenshaw**

58. Mark Crenshaw (#24135-083) is an adult male in the custody of USP Terre Haute in Terre Haute, Indiana.

59. Mr. Crenshaw has identified as a Sunni Muslim since 1994. As a Sunni Muslim, he takes his practices from the Sunna, or teachings and practices, of the Prophet. Mr. Crenshaw also follows the Hanafi school of thought, which mandates strict adherence and instructs that following the Prophet's practices is obligatory.

60. For his prayers to be accepted, Mr. Crenshaw sincerely believes that he must eat halal food because "flesh nurtured off of haram is in the fire."

61. Mr. Crenshaw eats the "no flesh" option from the mainline menu. Although this vegetarian diet violates his religious beliefs, he believes that it is preferable to eating forbidden meat. Mr. Crenshaw is concerned about cross-contamination in the non-meat options he consumes.

62. For a time, Mr. Crenshaw ate from the Religious Diet Program but no longer does so because kosher meals do not conform to his religious beliefs. Though kosher standards may once have been acceptable to Muslims, Mr. Crenshaw believes that modern-day kosher preparation is no longer permissible because, among other things, it does not require pronunciation of Allah's name before slaughter.

### Plaintiff Trone Kent

63. Plaintiff Trone Kent (#32556-044) is an adult male housed at USP Terre Haute in Terre Haute, Indiana.

64. Mr. Kent has identified as a Sunni Muslim for seven years and follows the Hanafi school of thought with respect to his dietary beliefs.

65. Mr. Kent sincerely believes that, as a Muslim, he must eat meat, and it must be certified halal. He cannot eat any food items contaminated with haram ingredients, including but not limited to traces of pork or alcohol.

66. Mr. Kent currently receives the Religious Diet Program meal plan. Although those meals do not satisfy halal requirements, he feels that they are more acceptable than mainline menu items because there are no traces of pork in the kosher food.

### Plaintiff John Wilson

67. Plaintiff John Wilson (#09408-007) is an adult male who was until recently in the custody of USP Terre Haute in Terre Haute, Indiana. He is currently in transit between federal facilities; his destination is unknown.

68. Mr. Wilson identifies as a Shia Muslim in the Jafari School of thought and has been Muslim since 2000.

69. Mr. Wilson's religious views require strict adherence to halal dietary requirements. Mr. Wilson sincerely believes that he must eat only halal-certified foods. He also believes that he must eat halal meat, because a hadith, an account of things said or done by the Prophet and his companions, proscribes being vegetarian. To Mr. Wilson, that is a binding command, like the requirement of daily prayer.

70. While 1400 years ago when the Prophet lived, kosher requirements might have approximated halal requirements, Mr. Wilson believes that modern-day kosher requirements are questionable in terms of their satisfaction of halal standards.

71. Mr. Wilson used to receive the "no flesh" option from the mainline menu, but he currently receives the Religious Meal Program trays and eats only the vegetables and fish (when provided). He does not eat the meat because it is kosher, not halal.

### Plaintiffs' Religious Exercise Is Substantially Burdened

72. USP Terre Haute's failure to provide Plaintiffs with nutritionally adequate meals that conform to their religious beliefs places a substantial burden on their religious exercise.

73. As a result of Defendants' actions, Plaintiffs have been forced to violate their religious beliefs by consuming food that has not been certified halal and that may contain alcohol, pork products, or other haram ingredients. Additionally, some of the Plaintiffs have been forced to maintain a vegetarian diet, which they believe to be forbidden by Islam. Plaintiffs believe their prayers and worship are destroyed by consuming non-halal food.

74. Plaintiffs' inability to maintain a halal-certified diet including halal meat has compromised their nutrition because they feel forced to forego questionable food items.

75. When Plaintiffs cannot forego haram products because they would otherwise go hungry, they feel psychologically burdened by having to choose between adequate nutrition and their sincerely held religious beliefs.

76. As a result, they are unable to practice their religious beliefs. Plaintiffs feel spiritually frustrated, tempted to sin by consuming non-halal foods, and distracted in prayer.

### Defendants Place Burdens on the Exercise of Islam that They Do Not Place on Other Religions

77. USP Terre Haute's Religious Diet Program offers inmates certified kosher meals to accommodate religious dietary restrictions. It does not provide certified halal meals.

78. USP Terre Haute purchases these certified kosher meals from an outside vendor.

79. USP Terre Haute refuses to provide certified halal meals from an outside vendor.

80. On information and belief, USP Terre Haute's Religious Diet Program is part of the BOP's broader Religious Diet Program, and conforms to the BOP's policies regarding the provision of meals that accommodate religious dietary restrictions.

81. Muslim inmates (i.e. Sunni, Sufi, and Shia) greatly outnumber Jewish inmates at USP Terre Haute and in the BOP system generally.

82. No Defendant, nor any agent of the BOP, has ever identified any interest to account for the provision of kosher-certified meals while refusing to provide similar halal-certified meals. The Defendants' actions in this matter are therefore not substantially justified.

## COUNT I

### Violations of the Religious Freedom Restoration Act
### "Substantial Burden on Religious Exercise"
### (42 U.S.C. §§ 2000bb et seq.)

83. Paragraphs 1 through 82 are incorporated by reference as if set forth fully herein.

84. Defendants have imposed, and continue to impose, substantial burdens on Plaintiffs' religious exercise that are causing Plaintiffs irreparable harm.

85. Defendants' policies and practices regarding the provision of meals require Plaintiffs to abandon their religious obligations because the Religious Diet Program does not include an option that is certified as halal and because the alternative suggested by Defendants—the "no flesh" option on the mainline menu—is subject to contamination and does not accommodate Plaintiffs' sincere religious belief that they are forbidden to be vegetarian.

86. Defendants' policies impose a substantial burden on Plaintiffs' religious exercise and do not further a compelling governmental interest. Moreover, even if the policies did further a compelling governmental interest, they do not represent the least restrictive means to further such interest.

## COUNT II

### Violation of the Free Exercise Guarantee of the
### First Amendment to the United States Constitution

87. Paragraphs 1 through 82 are incorporated by reference as if set forth fully herein.

88. Defendants have deprived, and continue to deprive, Plaintiffs of their right to free exercise of religion, as guaranteed by the First Amendment to the United States Constitution, by failing to provide Plaintiffs with nutritionally adequate meals that conform to their sincere religious beliefs.

## COUNT III

### Violation of the Equal Protection Guarantee of the
### Fifth Amendment to the United States Constitution

89. Paragraphs 1 through 82 are incorporated by reference as if set forth fully herein.

90. Defendants have deprived, and continue to deprive, Plaintiffs of their right to equal protection of the laws, as guaranteed by the Fifth Amendment to the United States Constitution, by treating Plaintiffs differently from similarly situated religious groups, such as the Jewish inmates who receive certified kosher meals.

91. The BOP has been on notice since at least 1980 that Muslim inmates require access to halal meals, including halal meat, to exercise their religious beliefs. Despite

assurances that the BOP would provide a diet that satisfied both Jewish and Muslim inmates' religious dietary requirements, the BOP has consistently accommodated kosher diets while refusing to accommodate halal diets.

92. Defendants' disparate treatment of Plaintiffs is based on Plaintiffs' religion and is motivated by unlawful discrimination.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a) Enter judgment for the Plaintiffs and against the Defendants on all counts of this Complaint;

b) Declare the practice of denying Plaintiffs adequate meals that conform to their sincere religious beliefs unconstitutional and/or in violation of federal law;

c) Enter a permanent injunction ordering the Defendants to provide the Plaintiffs with a nutritionally adequate, halal-certified diet that fully conforms to their religious beliefs and to ensure that halal-certified meat products are available for purchase in the Commissary;

d) Enter a permanent injunction ordering the Defendants to provide access to information regarding the source(s) of halal certification of their meals so that the Plaintiffs may ensure the meals conform to their religious beliefs;

e) Award the Plaintiffs reasonable costs and attorneys' fees;

f) Grant such other relief as the court deems just and proper.

## **DEMAND FOR JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury in this action of all issues so triable.

Dated: January 3, 2014                    Respectfully submitted,

By: __/s/ David J. Leviss_____

David J. Leviss
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel: (202) 383-5282
Fax: (202) 383-5414
dleviss@omm.com

Deborah Golden
WASHINGTON LAWYERS' COMMITTEE
11 Dupont Circle NW
Washington, DC 20036
Tel: (202) 319-1000
deborah_golden@washlaw.org

*Attorneys for Plaintiffs*