IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| **BRIAN CARR et al.,** | |
| Plaintiffs, | No. 2:14-cv-00001-WTH-WGH |
| v. | |
| **CHARLES E. SAMUELS, JR. DIRECTOR, FEDERAL BUREAU OF PRISONS;** | AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND ATTORNEYS' FEES |
| Defendant. | DEMAND FOR A JURY TRIAL |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Come now Plaintiffs Brian Carr, Mark Crenshaw, Trone Kent, and John Wilson ("Plaintiffs"), by and through their attorneys, and for their Complaint state as follows:

**NATURE OF ACTION**

1. Plaintiffs are sincere adherents of Islam confined in United States Penitentiary ("USP") and Federal Correctional Institution ("FCI") facilities. Each of the men sincerely believes that his religion commands him to eat certified halal meals, including certified halal meat.

2. The prisons' Religious Diet Program provides only kosher meals. The meat in the kosher meals does not come from animals slaughtered in a manner prescribed by Islamic law. The kosher meals are also susceptible to contamination from trace amounts of alcohol and other products that are forbidden by the Plaintiffs' religious beliefs. Inmates who do not qualify for the Religious Diet Program are offered a "no-pork" or "no-flesh" alternative to the mainline

1

menu, both of which are, similarly, susceptible to contamination from pork or other products forbidden by the Plaintiffs' religious beliefs.  As a result, Plaintiffs are forced to violate their sincerely held religious beliefs on a daily basis in order to survive.

3. The failure of Defendant Charles E. Samuels, Jr., in his capacity as Director of the Federal Bureau of Prisons ("BOP"), to provide certified halal meals, including halal meat, imposes a substantial burden on Plaintiffs' religious exercise and neither furthers a compelling governmental interest nor represents the least restrictive means of furthering a compelling governmental interest.  Defendant's failure to provide certified halal meals to Plaintiffs, while consistently accommodating Jewish inmates' religious dietary requirements, also amounts to discriminatory treatment that is based on Plaintiffs' religion, motivated by unlawful discrimination, and not reasonably related to legitimate penological interests.  Defendant has therefore violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1 and the Equal Protection Clause of the Fifth Amendment to the United States Constitution.  Plaintiffs request appropriate declaratory and injunctive relief.

## JURISDICTION AND VENUE

4. This Court has jurisdiction according to 28 U.S.C. § 1331.

5. Venue is proper in this district according to 28 U.S.C. § 1391.  A substantial part of the events giving rise to this action occurred in this district.  Two of the four Plaintiffs are located in this district.

6. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

7. This action is brought pursuant to RFRA, 42 U.S.C. § 2000bb-1(c).

**PARTIES**

8. Plaintiff BRIAN CARR is an adult person who was until recently confined at USP Terre Haute in Indiana. He is currently confined at FCI Jesup in Georgia. Mr. Carr is a sincere adherent of Sunni Islam.

9. Plaintiff MARK CRENSHAW is an adult person currently confined at USP Terre Haute. Mr. Crenshaw is a sincere adherent of Sunni Islam.

10. Plaintiff TRONE KENT is an adult person currently confined at USP Terre Haute. Mr. Kent is a sincere adherent of Sunni Islam.

11. Plaintiff JOHN WILSON is an adult person who was until recently confined at USP Terre Haute. He is currently confined at FCI Jesup in Georgia. Mr. Wilson is a sincere adherent of Shia Islam.

12. Defendant CHARLES E. SAMUELS, JR. is the Director of the BOP, which is an agency of the United States Department of Justice ("DOJ"). The BOP is authorized by the DOJ to maintain the federal prison system and to act through its governing body, officials, and employees. As Director of the BOP, Defendant supervises BOP operations and executes its policies. He is sued in his official capacity.

## STATEMENT OF FACTS

### Plaintiffs' Need To Consume Certified Halal Meals, Including Certified Halal Meat, Is a Sincere Religious Belief

13.     Each of the Plaintiffs identifies as Muslim and follows the five pillars of Islam to the extent he is able while incarcerated. The five pillars of Islam include: (1) declaration that there is no god except Allah and that the Prophet Muhammad is Allah's messenger; (2) prayer five times a day; (3) fasting during Ramadan; (4) zakat, or charity; and (5) haj, or pilgrimage, to Mecca once in a lifetime if financially and physically able.

14.     Plaintiffs also sincerely believe that their religion requires them to keep "halal" in all areas of life, including diet. This belief requires them to consume only food items that are halal, meaning lawful, as opposed to foods that are "haram," or forbidden. Haram foods include, but are not limited to, pork or pork byproducts, meat from animals not slaughtered according to ritual, additives containing alcohol, including sugar alcohols, gelatin, animal shortening, and certain emulsifiers or enzymes.

15.     Plaintiffs believe that consuming haram food makes their prayers ineffective.

16.     Plaintiffs believe that the Qur'an is the word of Allah.

17.     Plaintiffs believe that, according to the Qur'an and hadiths interpreting the Qur'an, as Muslims, they must abstain from forbidden or doubtful foods and are forbidden from being vegetarian. They are therefore obligated to consume halal meat, not just fish and vegetables, as part of their regular diet.

18.     Plaintiffs believe that for meat to be halal, the animal from which it comes cannot have died of causes other than proper slaughtering in accordance with Islam. The animal must

be slaughtered individually, by hand, by an adult Muslim while reciting the name of Allah, and in a manner prescribed by Islamic law. Meat that comes from an animal not slaughtered in this manner is haram. Kosher certification does not require these steps.

19. Plaintiffs believe that, unlike meat, fish are halal without regard to how they were slaughtered. Plaintiffs also believe that fish are haram if prepared with sauces or additives that are haram, or if exposed to cross-contaminants through the cooking or serving process.

20. Plaintiffs believe that while fresh fruits and vegetables are halal, fruits and vegetables are haram if prepared with sauces or additives that are haram, or if exposed to cross-contaminants through the cooking or serving process.

**USP Terre Haute, FCI Jesup, and the BOP Generally, Do Not Provide Halal Meals**

21. USP Terre Haute does not provide certified halal meals.

22. FCI Jesup does not provide certified halal meals.

23. As set forth in more detail below, the food currently provided in kosher-certified meal trays is haram according to Plaintiffs' sincerely held beliefs.

24. The BOP's Religious Diet Program has its origins in a lawsuit filed in 1980 by Muslim inmates seeking access to halal meals, including halal meat, and alleging among other things that the BOP was violating their right to equal protection of the law by accommodating kosher diets but not halal diets. In response to that suit, in 1984 the BOP voluntarily instituted the Modified Common Fare Religious Diet Program, which it represented to the District Court for the Middle District of Pennsylvania would be free of pork and pork derivatives, free of

contamination, and would include at least three hot entrees a week "to accommodate the religious diet needs of the Muslim and Jewish inmates and would meet or exceed the required dietary allowances established by the Food and Nutrition Board of the National Academy of Sciences." *Al Shakir v. Carlson*, 605 F. Supp. 374, 375 (M.D. Penn. 1984).

25. On information and belief, although some halal meals were served at different facilities after 1984, at some point the BOP abandoned the Modified Common Fare Religious Diet Program in favor of a Religious Diet Program called the Certified Processed Foods Program, which consists of individual sealed trays of pre-prepared kosher-certified meals. The Religious Diet Program meals are not certified as halal.

26. USP Terre Haute and FCI Jesup follow the BOP's national policy regarding religious dietary requirements. Pursuant to that policy, inmates who request halal meals are directed to two options: the national Religious Diet Program or the mainline menu "no flesh" option. Neither alternative satisfies Plaintiffs' religious dietary requirements.

27. The BOP's national policies concerning religious dietary requirements have never required the provision of certified halal meals to inmates.

**Religious Diet Program**

28. USP Terre Haute and FCI Jesup's Religious Diet Program consists of individually packaged kosher meal trays purchased from an outside vendor.

29. The kosher meal trays contain meat.

30. USP Terre Haute's and FCI Jesup's Religious Diet Programs are administered in accordance with the BOP's national Religious Diet Program standards, which specify that meals provided pursuant to that program are certified kosher.

31. Although both USP Terre Haute and the BOP have represented to Plaintiffs that the Religious Diet Program fulfills the dietary requirements of all religions, the program does not require halal certification, and the meals provided pursuant to that program are not halal certified even though the BOP acknowledges that Muslim inmates have religious dietary requirements.

32. Kosher-certified meals do not conform to Plaintiffs' religious dietary restrictions. Kosher requirements for the slaughter of animals do not ensure that the animal was slaughtered by a Muslim, or that the name of Allah was pronounced over each animal before it was killed. Additionally, Plaintiffs believe that some commercial kosher slaughterhouses use machines to kill the animals, which is forbidden under Plaintiffs' religious beliefs.

33. Kosher requirements also differ from halal requirements because the latter forbid the ingestion of any alcohol, including the trace amounts of alcohol that appear in some sauces, seasonings, and food items. Many wines and alcohols are considered kosher. Kosher certification therefore does not require that the food be free of even trace amounts of alcohol. Put simply, kosher is not halal. The BOP's contrary stance forces Plaintiffs to violate their sincerely held religious beliefs in order to survive.

## "No Flesh" Option

34. The BOP's standard, non-specialized national inmate meal program is referred to as the "mainline" menu. The mainline menu includes various meat products.

35. Pursuant to BOP national policy, the mainline menu has an official "no flesh" option for which inmates may register. The "no flesh" option is identical to the regular mainline meals except that a non-meat alternative protein (such as peanut butter or cottage cheese) replaces the meat items.

36. The "no flesh" mainline menu option does not accommodate Plaintiffs' religious dietary restrictions because it requires Plaintiffs to maintain a vegetarian diet, which Plaintiffs sincerely believe to be forbidden by Islam.

37. The "no flesh" option is further doubtful or haram because many common foods, particularly prepared foods, contain trace amounts of pork enzymes or other haram ingredients. USP Terre Haute, FCI Jesup, and the BOP have not represented that the vegetables, bread, and dairy products served on the "no flesh" option are free from these enzymes and other haram ingredients.

38. Unlike the Religious Diet Program's kosher-certified meals, which are purchased from an outside vendor and arrive in individually wrapped trays to prevent contamination, the "no flesh" option is prepared at the prisons in the same kitchen as the non-vegetarian meals.

39. At both USP Terre Haute and FCI Jesup, inmates receiving the mainline menu request either a regular tray or a "no flesh" tray, and individuals working in the kitchen place each item onto the tray in accordance with those requests. There is no physical separation on

the serving line between items containing meat and those that are purportedly vegetarian; a container of vegetables from which both regular and "no flesh" trays are served may be located directly next to a container from which pork is served.

40.     In addition, on information and belief, the "no flesh" option at both USP Terre Haute and FCI Jesup uses the same trays as the mainline menu, and "no flesh" items are prepared using the same pots and other kitchen utensils that, on other occasions, are used to prepare items containing haram meat or meat that has not been certified halal.

41.     Plaintiff Wilson has personally witnessed sanitation problems in the USP Terre Haute and FCI Jesup kitchens that make it impossible for Plaintiffs to have confidence that the "no flesh" option is not contaminated with meat products or other haram ingredients.  These sanitation problems include the mechanical dishwasher breaking, running out of soap to clean trays, running out of hot water, build-up of food residue inside the large pots in which food is prepared, and other inmates' failure to thoroughly clean the pots, trays, and utensils.

42.     When the prison or a section of the prison is placed on lockdown, which occurs as often as a few times per month in USP Terre Haute, inmates are served meals in their cells for the duration of the lockdown.  Inmates on the Religious Diet Program continue to receive the same kosher-certified trays they otherwise would.  However, inmates on the "no flesh" mainline menu receive the same meals as inmates on the regular, non-vegetarian diet.

43.     On past occasions when USP Terre Haute was placed on lockdown, two of the three daily meals for both the "no flesh" diet and the regular, non-vegetarian diet consisted of bread, cheese, and a bologna-type meat.  Plaintiffs on the "no flesh" option have been forced to

consume the bologna-type meat during lockdown because the bread and cheese alone were not enough to sustain them.

44. On information and belief, the bologna-type meat served during lockdown is not certified halal.

45. On information and belief, FCI Jesup follows the prisoner meal policies described in paragraphs 43-44 when the prison is placed on lockdown.

**Food Available for Purchase Through the Commissary**

46. Financial circumstances permitting, inmates can purchase food from the Commissary or can attempt to order items through the so-called special purchase order ("SPO") procedure. Commissary and SPO purchases are restricted in both frequency and volume and are not permitted at all during inmate-specific or facility-wide lockdowns.

47. USP Terre Haute provides one meat product in the Commissary that has been certified halal, a beef sausage.

48. FCI Jesup's publicly available Commissary list does not include any halal-certified meat products, nor does it include any other halal-certified items.

49. Plaintiffs at USP Terre Haute are unable to afford to make regular purchases of the halal sausage, and all Plaintiffs are unable to afford to make regular purchases of halal meat and meals through the SPO process. Between paying restitution for their crimes, purchasing hygiene products, stamps, and legal copies, and paying for phone calls to family, any remaining income Plaintiffs have from their prison jobs or from family and friends is inadequate to purchase a diet of religiously acceptable foods.

## Plaintiffs' Religious Beliefs and Current Diets

### Plaintiff Brian Carr

50.     Plaintiff Brian Carr (#14820-016) is an adult male who was until recently in the custody of USP Terre Haute in Terre Haute, Indiana.  He was transferred to FCI Jesup in Jesup, Georgia after the original Complaint was filed on January 3, 2014, and remains confined at that correctional facility.

51.     Mr. Carr has been Muslim since 1994 and has identified as a Sunni Muslim since 1999.

52.     Mr. Carr identifies with the Hanafi school of Islamic thought, which provides a comprehensive explanation of halal dietary laws.  Mr. Carr sincerely believes that he must follow the practices of the Prophet, which means that he must eat only halal-certified food and that he is forbidden from being vegetarian.  Eating a halal diet, including halal meat, is also essential to his practice as a Sufi.

53.     Mr. Carr is on the Religious Diet Program and receives kosher-certified meal trays.  He only eats the vegetables and fish (when provided) on these kosher-certified meal trays.  Although he believes even these foods are haram because they are not halal certified and therefore may be contaminated with trace amounts of alcohol or other products during production, he consumes them to avoid starvation.  He does not eat the meat because it does not conform to his religious beliefs in that, among other things, kosher standards do not require a Muslim to pronounce Allah's name over each animal before slaughter and permit trace amounts of alcohol in the food.

54. Mr. Carr does not eat from the mainline menu because, even with the "no flesh" option, he is concerned about contamination from pork products and other haram ingredients.

### Plaintiff Mark Crenshaw

55. Mark Crenshaw (#24135-083) is an adult male in the custody of USP Terre Haute in Terre Haute, Indiana.

56. Mr. Crenshaw has identified as a Sunni Muslim since 1994. As a Sunni Muslim, he takes his practices from the Sunna, or teachings and practices, of the Prophet. Mr. Crenshaw also follows the Hanafi school of thought, which mandates strict adherence to halal dietary requirements and instructs that following the Prophet's practices is obligatory.

57. For his prayers to be accepted, Mr. Crenshaw sincerely believes that he must eat halal food, including meat, because, as he says, "flesh nurtured off of haram is in the fire."

58. For a time, Mr. Crenshaw ate from the Religious Diet Program but no longer does so because kosher meals do not conform to his religious beliefs.

59. Mr. Crenshaw eats the "no flesh" option from the mainline menu. Although this vegetarian diet violates his religious beliefs, he believes that it is preferable to eating forbidden meat. Because the non-meat options he consumes are not certified halal, Mr. Crenshaw is concerned about cross-contamination from pork and other haram ingredients, but he is forced to consume these haram foods to survive.

### Plaintiff Trone Kent

60. Plaintiff Trone Kent (#32556-044) is an adult male housed at USP Terre Haute in Terre Haute, Indiana.

61.     Mr. Kent has identified as a Sunni Muslim for seven years and follows the Hanafi school of thought with respect to his dietary beliefs.

62.     Mr. Kent sincerely believes that, as a Muslim, he must eat meat, and it must be certified halal.  He cannot eat any food items contaminated with haram ingredients, including but not limited to traces of pork or alcohol.

63.     Mr. Kent currently receives the Religious Diet Program meal plan.  Although the food does not satisfy halal requirements, he eats the kosher meal trays in an attempt to avoid pork products.  Mr. Kent is forced to consume the haram foods in the kosher meal trays to avoid starvation.

**Plaintiff John Wilson**

64.     Plaintiff John Wilson (#09408-007) is an adult male who was until recently in the custody of USP Terre Haute in Terre Haute, Indiana.  He is currently housed at FCI Jesup in Jesup, Georgia.

65.     Mr. Wilson identifies as a Shia Muslim in the Jafari School of thought and has been Muslim since 2000.

66.     Mr. Wilson's religious views require strict adherence to halal dietary requirements.  Mr. Wilson sincerely believes that he must eat only halal-certified foods.  He also believes that he must eat halal meat because a hadith, an account of things said or done by the Prophet and his companions, proscribes being vegetarian.  To Mr. Wilson, that is a binding command, like the requirement of daily prayer.

67. Mr. Wilson used to receive the "no flesh" option from the mainline menu, but he currently receives the Religious Diet Program trays and eats only the vegetables and fish (when provided). Like the other Plaintiffs, he believes these foods to be haram because they are not halal-certified and may contain or be contaminated by forbidden ingredients. He does not eat the meat because it is kosher, not halal.

### Plaintiffs' Religious Exercise Is Substantially Burdened

68. Defendant's failure to provide Plaintiffs with nutritionally adequate meals that conform to their religious beliefs places a substantial burden on their religious exercise. As a result of Defendant's actions, Plaintiffs have been forced to violate their religious beliefs because, in order to survive, they must consume food that has not been certified halal and that may contain alcohol, pork products, or other haram ingredients.

69. Plaintiffs believe their prayers and worship are destroyed by maintaining a vegetarian diet and consuming non-halal food. Thus, when Plaintiffs are forced to consume haram products because they would otherwise go hungry, they are religiously and psychologically burdened by having to choose between starvation and their sincerely held religious beliefs.

70. Even if Plaintiffs had access to a nutritionally adequate diet of vegetarian halal foods, which they do not, Defendant's refusal to provide them with halal-certified meat imposes an independent substantial burden on their religious exercise.

71.     Plaintiffs are unable to afford to purchase halal meat and meals through the Commissary or the SPO process on a regular basis. In any event, forcing plaintiffs to pay for religiously appropriate food is itself a substantial burden on Plaintiffs' exercise of their religion.

72.     As a result of the BOP's policy, Plaintiffs are unable to practice their religious beliefs. They are forced to sin constantly by failing to consume halal meat and by eating a diet of forbidden or doubtful foods, leading them to be spiritually frustrated and distracted in prayer.

### Defendant Places Burdens on the Exercise of Islam that It Does Not Place on Other Religions

73.     The BOP's nationwide Religious Diet Program offers inmates certified kosher meals to accommodate religious dietary restrictions. It does not provide certified halal meals.

74.     In accordance with this national BOP policy, USP Terre Haute and FCI Jesup provide kosher meals from outside vendors to all inmates on the Religious Diet Program.

75.     Muslim inmates (i.e. Sunni, Sufi, and Shia) greatly outnumber Jewish inmates at USP Terre Haute, FCI Jesup, and in the BOP system generally.

76.     Forcing Plaintiffs to purchase halal-certified meals or meat through the Commissary or SPO process in order for them to exercise their religious beliefs, while providing kosher-certified meals to Jewish inmates through the Religious Diet Program, constitutes disparate treatment of similarly situated religious groups. It is also not what the BOP represented it would do through the Religious Diet Program upon its institution in 1984.

77. Neither the Defendant, nor any agent of the BOP, has ever identified any interest, much less a compelling one, to account for the provision of kosher-certified meals while refusing to provide similar halal-certified meals.

## COUNT I

**Violations of the Religious Freedom Restoration Act
"Substantial Burden on Religious Exercise"
(42 U.S.C. §§ 2000bb et seq.)**

78. Paragraphs 1 through 77 are incorporated by reference as if set forth fully herein.

79. Defendant has imposed, and continues to impose, substantial burdens on Plaintiffs' religious exercise that are causing Plaintiffs irreparable harm, for which there is no adequate remedy at law.

80. Defendant's policies and practices regarding the provision of meals require Plaintiffs to abandon their religious obligations because the Religious Diet Program does not include an option that is certified as halal and because the alternative suggested by Defendant—the "no flesh" option on the mainline menu—is subject to contamination with haram ingredients and does not accommodate Plaintiffs' sincere religious belief that they are forbidden to be vegetarian. Plaintiffs believe that, when they are forced to consume haram foods or to maintain a vegetarian diet, their prayers and worship are rendered ineffective.

81. Defendant's policies impose a substantial burden on Plaintiffs' religious exercise and do not further a compelling governmental interest. Moreover, even if the policies did further a compelling governmental interest, they do not represent the least restrictive means to further such interest.

## COUNT II

### Violation of the Equal Protection Guarantee of the
### Fifth Amendment to the United States Constitution

82. Paragraphs 1 through 81 are incorporated by reference as if set forth fully herein.

83. Defendant has deprived, and continues to deprive, Plaintiffs of their right to equal protection of the laws, as guaranteed by the Fifth Amendment to the United States Constitution, by treating Plaintiffs differently from similarly situated religious groups, such as the Jewish inmates who receive certified kosher meals.

84. The BOP has been on notice since at least 1980 that Muslim inmates require access to halal meals, including halal meat, to exercise their religious beliefs. Despite assurances that the BOP would provide a diet that satisfied both Jewish and Muslim inmates' religious dietary requirements, the BOP has consistently accommodated kosher diets while refusing to accommodate halal diets.

85. Defendant's disparate treatment of Plaintiffs is based on Plaintiffs' religion and is motivated by unlawful discrimination.

86. Defendant's discriminatory treatment is not reasonably related to legitimate penological interests.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a) Enter judgment for the Plaintiffs and against the Defendant on all counts of this Complaint;

b) Declare the practice of denying Plaintiffs adequate meals that conform to their sincere religious beliefs unconstitutional and/or in violation of federal law;

c) Enter a permanent injunction ordering the Defendant to provide the Plaintiffs with a nutritionally adequate, halal-certified diet that fully conforms to their religious beliefs;

d) Enter a permanent injunction ordering the Defendant to provide access to information regarding the source(s) of halal certification of their meals so that the Plaintiffs may ensure the meals conform to their religious beliefs;

e) Award the Plaintiffs reasonable costs and attorneys' fees;

f) Grant such other relief as the court deems just and proper.

## **DEMAND FOR JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury in this action of all issues so triable.

Dated: June 13, 2014     Respectfully submitted,

By: __/s/ David J. Leviss_____

David J. Leviss
O'MELVENY & MYERS LLP


Deborah Golden
WASHINGTON LAWYERS' COMMITTEE

*Attorneys for Plaintiffs*