UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRIAN CARR,<br>MARK CRENSHAW,<br>TRONE KENT,<br>JOHN WILSON,<br><br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>FEDERAL BUREAU OF PRISONS (BOP),<br><br>　　　　　　　Defendant. | No. 2:14-cv-00001-WTL-MJD |

**ORDER ON MOTION TO COMPEL**

This matter is before the Court on *Plaintiffs' Motion to Compel Production of Privilege Log Documents*. [Dkt. 155.] Plaintiffs seek assorted documents that the BOP has withheld as protected by the attorney-client or work-product privileges. [*See* Dkt. 156-6.] In order to evaluate Plaintiffs' arguments and the BOP's assertion of privilege, the Court directed the BOP to submit the documents at issue for *in camera* review. [Dkt. 162.] Having reviewed the parties' arguments [Dkt. 156; Dkt. 159; Dkt. 161], and having conduct a thorough review of the submitted documents, the Court now **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' *Motion* [Dkt. 155].

**I. Background**

This matter involves Plaintiffs' allegations that the BOP has wrongfully denied Plaintiffs halal meat in violation of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb-1, and the Fifth Amendment Equal Protection Clause. A lengthy email outage and recovery procedure at the BOP stalled discovery for over a year; subsequent efforts to produce documents

1

have likewise proven glacial. In part due to these problems, Plaintiffs complained that BOP withheld documents subject to a deficient privilege log. As promised prior to the filing of the instant *Motion*, the BOP produced yet another privilege log that largely remedies the deficiencies in the earlier logs. But disputes over possible waiver and the applicability of privilege remain. Specifically, Plaintiffs seek an order requiring Defendant to produce the unshaded entries on the table at Docket 156-6.[1] The Court thus ordered the *in camera* production of the challenged documents to assess the applicability of the claimed privileges.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 37(a)(3), a party may move the Court to compel disclosure of documents if the party's request for production comports with the scope of discovery. Fed. R. Civ. P. 37(a)(3)(B)(iv). The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad, only limited from the outset to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Here, the BOP is withholding the redacted documents on the basis of privilege. Evidentiary privileges are narrowly construed because they permit the withholding of relevant information. *See, e.g.*, *Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). The party resisting discovery must establish its claim to privilege as to each withheld document. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009) (citing *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002)).

---

[1] In their reply brief, Plaintiffs withdrew their challenges to Bates stamped entries EMAIL166279, EMAIL166280, and EMAIL166282.

2

## III. Discussion

Plaintiffs lodge five arguments as to why the challenged entries on Defendant's privilege log should be produced, which the Court distills into two broad arguments.[2] First, Plaintiffs argue that certain privilege log entries do not establish the asserted privilege. Second, Plaintiff make a waiver argument that applies across the board: Plaintiffs argue that Defendant has implicitly waived any claim to privilege as to all of the challenged documents by placing the communications at issue in the litigation. The Court addresses each of these arguments in turn.

### A. Privilege

Plaintiffs first challenge the privilege designation of certain documents on one of three grounds: an attorney was neither the sender nor recipient, the subject matter does not indicate that the document was privileged, or the number or type of recipients on the email chain demonstrates that the document was not privileged.

In response, the BOP argues that all of the challenged documents either convey legal advice or provide information in response to attorney requests as part of the attorney's efforts to render advice. The BOP also tendered its revised privilege log in response, using the word "legal" in more entries than in the version filed with Plaintiffs' *Motion*.

---

[2] The first three are arguments that the BOP failed to established the asserted privilege:
1. Documents for which no attorney is among the sender or recipients of the communication, and the privilege is not implicated in any other manner
2. Documents for which an attorney is listed as a sender or recipient, or is otherwise implicated, but the description provided in the privilege log does contain any indication of privilege
3. Documents for which the number or type of recipients indicates that the communications were not intended to be confidential, and thus, no privilege applies

[Dkt. 156-6 at 2.] The final two are waiver arguments:

4. Documents concerning the BOP's efforts to locate an acceptable halal vendor for which the BOP has waived any claim of privilege
5. Documents implicating the BOP's claim that security concerns preclude its ability to accommodate individualized dietary requests for which the BOP has waived any claim of privilege

[*Id.*]

3

In reply, Plaintiffs stand by their objections, but argue that the BOP's late privilege log descriptions warrant little weight. Plaintiffs appear to concede that, "taking [most of] the BOP's new descriptions at face value," the revised privilege log appears to reflect more properly withheld documents than did the previous version. [Dkt. 161 at 3.] Plaintiffs continue to assert waiver, addressed *infra* in Part III.B, as to these documents.

The BOP asserts attorney-client and work product privilege in withholding the documents listed on its privilege log. The purpose of attorney-client privilege is to encourage open and honest communication between clients and their attorneys. *Upjohn Co. v. United States,* 449 U.S. 383, 388 (1981). The attorney-client privilege protects "communications made in confidence by a client and client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). A party asserting attorney-client privilege must establish that the withheld communications were made "(1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co.*, 449 U.S. at 390.

Work product privilege, meanwhile, is codified at Rule 26(b)(3) which protects "documents and tangible things that are prepared in anticipation of litigation," except in certain circumstances not raised here. Fed. R. Civ. P. 26(b)(3)(A). This "independent . . . source of protection" serves two purposes: "(1) to protect an attorney's thought processes and mental impressions against disclosure; and (2) to limit the circumstances in which attorneys may

4

piggyback on the fact-finding investigation of their more diligent counterparts." *Sandra T.E.*, 600 F.3d at 621-22 (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)).

The Court, in reviewing Plaintiffs' *Motion*, did not take the BOP's privilege log designations at face value but instead engaged in a careful, document-by-document review of the documents to which Plaintiffs' arguments apply. *See United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992) ("[P]rivilege must be made and sustained on a document-by-document basis."). Except as specifically noted below, the Court concludes that the BOP has established its claims to attorney-client and work product privilege.

First, the emails between non-attorneys all convey privileged legal advice from one BOP employee to another.[3] Individuals in an organizational structure are permitted to "consult with one another" about an attorney's legal advice "so that all relevant information is known before making a legal decision" without waiving the privilege. *Roth v. Aon*, 254 F.R.D. 538, 541 (N.D. Ill. 2009). The emails between non-attorneys in this case meet this description. EMAIL00167476, for example, is an email from a BOP employee forwarding an email chain from an attorney providing and discussing legal advice to other BOP employees. The documents between non-attorneys thus fall squarely within the BOP's attorney-client privilege.

Second, the Court is not persuaded by Plaintiffs' argument that BOP attorneys reviewing administrative responses are acting in a "business" capacity instead of as attorneys. As a factual

---

[3] In this area in particular Plaintiffs recognize that many of the descriptions in the new log implicate legal advice whereas such was not necessarily the case in the old log filed with the *Motion*. [*See* Dkt. 161 at 3.] Having specifically reviewed the privilege log entries that added an attorney or legal advice to the description, the Court can confirm that this is the case.

All counsel are reminded that the more exacting level of diligence evinced by the new log is actually the proper level of diligence that should have been applied in preparing the original log. Privilege protection is not generally an area where a lot of "do overs" are allowed. However, the broad claw back provision entered in this matter [Dkt. 63 at 2] may be applied to forgive the obvious deficiencies in the BOP's original log.

matter, the communications at issue involve attorneys reviewing inmate requests for religious accommodations, seeking information from non-attorneys to inform their review, and rendering advice as to whether possible responses comply with relevant law. For example, EMAIL00016483 discusses the impact of ongoing litigation on the appropriateness of certain accommodations. EMAIL00157135 provides a legal risk assessment regarding the same. These are paradigmatic examples of communications covered by the attorney-client privilege. *See Rehling*, 207 F.3d at 1019 (rejecting argument that attorney, who also made employment decisions, was acting in business capacity where attorney "gave ranking members of the CPD advice about Rehling's placement and the City's obligations under the ADA").

Third, the withheld communications between BOP attorney Alma Oben and her so-called "working group" all directly seek or provide legal advice. The deposition of Heidi Kugler to which Plaintiffs selectively cite is not to the contrary. Plaintiffs cite to the following inquiry for the proposition that "Ms. Kugler stated without equivocation that the group did not discuss legal strategy" [Dkt. 156 at 9]:

> Q    Okay. Do you discuss – would you characterize **all** discussions at these meetings [with Attorney Oben] as pertaining to legal strategy?
> A    No, no, because the -- the content of it really is looking at how can the Agency . . . we want to look at how we can accommodate inmates' requests and needs . . . .
> Q    So it would be the content of the meetings – of the minutes for the meetings, it would be brainstorming about how to provide halal?
> A    Right.

[Dkt. 156-7 at 6 (emphasis added).] First of all, Ms. Kugler only answered whether she would characterize **all** discussions at the meetings as pertaining to legal strategy—not, as Plaintiffs suggest, whether she would characterize **any** discussions as pertaining to such. Second, Plaintiffs omit the next relevant question:

> Q    Okay. What is the role of Ms. Oben in this working group?

6

> A   Ms. Oben has -- has been very helpful in -- in helping us further understand and claim First Amendment religious rights for inmates, kind of understand the context of that, as well as to remind us of the prongs of RFRA, the Religious Restoration Act, and how we can best meet them as an agency.

[Dkt. 156-7 at 6-7.] Ms. Kugler's testimony does not stand for the proposition for which Plaintiffs' cite it, nor does the testimony support Plaintiffs' position that Attorney Oben was not providing legal advice. Furthermore, Ms. Kugler's perspective on what was said at meetings is not dispositive of whether the documents from the working group are privileged. This Court's independent review, however, confirms that the withheld documents are entitled to attorney-client protection and that the BOP properly and carefully redacted only privileged communications.

Finally, the fact that certain documents may have been sent to many recipients has no bearing on their privileged character. Most of the emails about which Plaintiffs appear to be complaining were from attorneys **seeking** information from the various religious experts within the BOP "to enable [the lawyer] to give sound and informed advice." *Upjohn Co.*, 449 U.S. at 390; *see, e.g.*, EMAIL00023636; *Sandra T.E.*, 600 F.3d at 620 (holding that privilege extends to an attorney's "factual investigation in connection with the provision of legal services"). Other such emails are conveying legal advice to several of the many individuals involved in decision making at the BOP. *E.g.*, EMAIL00154475. The emails show that the recipients are the "employees who will put into effect" the legal advice rendered. *Upjohn*, 449 U.S. at 392. Emails in both categories—those seeking information and those providing legal advice—are clearly privileged.

The BOP has failed, however, to establish the asserted privilege as to EMAIL00032796 and EMAIL00032836. This is because "the Court cannot assume that simply adding an attorney to an email via CC creates an expectation that legal services will be rendered."

7

*Hamdan v. Indiana Univ. Health N., LLC*, No. 1:13-CV-00195-WTL, 2014 WL 2881551, at *5 (S.D. Ind. June 24, 2014). While Attorney Oben is "CC'ed" on these emails, neither the documents themselves nor the privilege log provides a basis for the asserted privilege. An attorney did not solicit the information in these emails and, while the emails may have sought legal advice, they also clearly sought nonlegal advice from nonlawyers. At no point did Attorney Oben actually respond to the inquiries with legal advice. Thus, the Court finds that these emails are not privileged and must be produced.

### B. Waiver

Second, Plaintiffs seek to compel production of all challenged documents, arguing that the BOP has placed privileged information "at issue" and thereby impliedly waived any claim to privilege. Plaintiffs point out that RFRA requires the BOP is required to demonstrate that the burden on Plaintiffs' religion "is in furtherance of a compelling governmental interest[] and is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. Specifically, Plaintiffs maintain that, because the BOP has claimed that it cannot find a viable halal vendor and that it has security concerns with specialized requests, the BOP is no longer entitled to keep private any attorney-client communications on these issues.

In response, the BOP argues that it has not asserted an advice of counsel defense, nor has it relied upon privileged communications to establish its defense. The BOP argues that Plaintiffs are simply seeking to do away with the privilege in search of impeachment evidence, which is not a proper basis for implicit waiver.

In reply, Plaintiffs argue that the privileged communications on security concerns and efforts to find halal vendors are at the center of the BOP's defense.

The burden for establishing waiver rests with the party challenging a valid assertion of privilege. *See Rehling*, 207 F.3d at 1019. Plaintiffs cite to this Court's order in *Tecnomatic, S.p.A. v. Remy, Inc.* for the test that courts generally apply in assessing claims of implicit waiver: "A party waives attorney-client privilege through implication when it '(1) affirmatively places information at issue; (2) the information is relevant to the dispute; and (3) upholding privilege would be unfair, since it would deny the other side vital information.'" No. 1:11-cv-00991-SEB-MJD, 2014 WL 2510202, at *3 (S.D. Ind. June 3, 2014) (quoting *FDIC v. Fid. & Deposit Co of Md.*, 3:11–CV–19–RLY–WGH, 2013 WL 2421770 (S.D. Ind. June 3, 2013)). But Plaintiffs omit the very next sentence from the *Tecnomatic* order, which articulates the critical threshold limiting principle on implied waiver:

> Generally, implied waiver occurs "only if a party uses **privileged communications** to defend itself or attack its opponent." *Treat v. Tom Kelley Buick Pontiac GMC, Inc.,* 1:08–CV–173, 2009 WL 1543651 (N.D. Ind. June 2, 2009) (citing *Claffey v. River Oaks Hyundai,* 486 F. Supp. 2d 776, 778 (N.D. Ill. 2007) (emphasis added)). Even where a client's state of mind may be relevant, a client does not waive the attorney-client privilege by implication unless the client relies "specifically on advice of counsel to support a claim or defense." *Harter v. Univ. of Ind.,* 5 F. Supp. 2d 657, 664 (S.D. Ind. 1998). "[T]he possibility that privileged communications could provide the opponent with relevant evidence is **not** a sufficient basis for finding a waiver of the privilege." *Id.* (emphasis added).

*Id.* (emphasis in original). Despite Plaintiffs' argument to the contrary, the Court's order in *Tecnomatic* is consistent with the prevailing rule that a strong need for relevant, privileged communications is a necessary but not sufficient condition of implied waiver. Implied waiver also requires that a privileged relationship or communication be relied upon as part of a party's claim or defense.

As then-District Judge David Hamilton observed, "The better-reasoned cases hold . . . that when a client files a lawsuit in which his or her state of mind (such as good faith or intent)

9

may be relevant, the client does not implicitly waive the attorney-client privilege as to all relevant communications unless the client relies specifically on advice of counsel to support a claim or defense." *Harter*, 5 F. Supp. 2d at 664 (collecting cases). And the possibility that privileged materials may provide impeachment evidence is insufficient to find waiver. *Sandra T.E.*, 600 F.3d at 623 (citing *Hauger v. Chic., Rock Island & Pac. R.R. Co.*, 216 F.2d 501, 508 (7th Cir. 1954)).

Applying these principles to Plaintiffs' *Motion* makes it clear that the BOP has not implicitly waived its privilege by relying on an advice of counsel defense or using privileged communications to make its defense while withholding them from disclosure. If Plaintiffs could show that the BOP intended to rely upon privileged communications to show its work (as a sword), then the BOP would not be permitted to withhold such privileged communications from Plaintiffs (as a shield). But Plaintiffs make no showing that such is the case.

Undeterred, Plaintiffs' offer the unsupported argument that a privilege waiver occurs in every case where a party must "show its work." [Dkt. 161 at 11.] Plaintiffs argue that the privileged communications on meal accommodations "are the defense." [Dkt. 161 at 11 (emphasis omitted).] This is plainly not the case. The BOP may support its defense, for example, by detailing the submissions it has received from outside food vendors—which, as discussed in an earlier Order [Dkt. 125], are the types of documents that are not protected from discovery. In fact, the BOP will have to support its defense only with unprivileged information unless it decides to rely upon attorney-client communications to demonstrate due diligence and thereby waive its privilege.

Plaintiffs' overbroad reading of the implied waiver doctrine is exemplified by their position that "the BOP has directly placed the content of the relevant communications at issue."

[Dkt. 156.] Plaintiffs are correct that the BOP's privileged discussions with its attorneys are, in all likelihood, relevant to its affirmative defense. But mere relevance is insufficient to find waiver. Following Plaintiffs' reasoning, the BOP should be allowed access to Plaintiffs' communications with counsel regarding the sincerity of their firmly held beliefs. After all, Plaintiffs bear the burden of demonstrating that they firmly hold their Islamic beliefs, and what they have told their attorneys about those beliefs would be directly relevant to this issue. But Plaintiffs may demonstrate that they sincerely hold their religious beliefs without relying upon privileged communications, just as the BOP may demonstrate that it diligently pursued food provider alternatives without relying upon privileged communications. Clearly, implied waiver does not stretch nearly as far as Plaintiffs suggest; the privilege is not waived in every case where a party's sincerity--of effort to find a halal vendor or of religious belief--is at issue.

Despite their protestations to the contrary, Plaintiffs are asking the Court "to allow discovery of attorney work product simply as impeachment evidence," *Sandra T.E.*, 600 F.3d at 622, so that they may use it to challenge the unprivileged evidence upon which the BOP relies. Because the BOP's privileged communications are not issue in this case, Plaintiffs have failed to demonstrate that the BOP has waived its attorney-client and work product privilege.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** *Plaintiffs' Motion to Compel Production of Privilege Log Documents*. [Dkt. 155.] Specifically, the Court **ORDERS** the BOP to produce EMAIL00032796 and EMAIL00032836 **on or before July 13, 2017**.

While Plaintiffs were largely unsuccessful on the instant *Motion*, the Court recognizes that a number of their challenges appeared stronger when the *Motion* was filed based upon the

11

BOP's earlier privilege log. The Court therefore declines to award fees to either party under

Federal Rule of Civil Procedure 37(a)(5)(C).

    SO ORDERED.

Dated: 10 JUL 2017

_Mark J. Dinsmore_
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.